UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL GARCIA,<br><br>    Plaintiff,<br><br>v.<br><br>F. FOULK, et al.,<br><br>    Defendants. | No. 2:14-cv-2378 JAM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendants violated his Eighth Amendment rights by subjecting him to inhumane conditions of confinement and retaliated against him for exercising his First Amendment rights. Before the court is defendants' motion for summary judgment. Defendants allege plaintiff failed to exhaust his administrative remedies and has failed to establish all of the elements of some claims. For the reasons set forth below, the undersigned recommends that the motion be denied with respect to the exhaustion defense and denied without prejudice on defendants' remaining arguments, that counsel be appointed for plaintiff, and a hearing be scheduled to take evidence on the issue of exhaustion.

////

////

////

1

# BACKGROUND

## I. Allegations in the Complaint

Plaintiff is an inmate at Pelican Bay State Prison ("PBSP"). The conduct which is the subject of his complaint occurred when he was incarcerated at High Desert State Prison ("HDSP"). Plaintiff identifies the following defendants: (1) F. Foulk, Warden; (2) Riley, Supervising Custodial Officer; (3) Correctional Officer ("CO") D. Cox; (4) CO K. Loftin; (5) CO Witcheal; (6) CO Wung; (7) CO Madrigal; and (8) CO Holmes. (ECF No. 1 at 2-3.)

Plaintiff alleges that on March 27, 2013, he was transported from PBSP to HDSP after he was charged with attempted murder of a PBSP correctional officer. On his first morning at HDSP, two unnamed officers flung a food tray into his cell, hitting plaintiff's body and causing the food to fall to the floor. Defendant Sergeant Riley observed the incident. Riley told plaintiff to clean up the food; plaintiff refused; and Riley told plaintiff he would be moved to another cell. (ECF No. 1 at 4.)

Later that day, Riley returned with two officers. They moved plaintiff to a cell in the C-section of Z Unit. Plaintiff alleges the area smelled of urine and had carts of trash and dirty clothes laying around. Plaintiff saw no other prisoners in the surrounding cells until about a month later. He contends he was the only prisoner in C-section for that month. He was placed in cell #129. The sink and toilet were covered in "filth," "dirt," and "rust." The mattress was only a thin piece of a mattress on a concrete bunk; plaintiff estimates it was less than half the thickness of a standard mattress. It was ripped and dirty. Plaintiff states he complained to Riley about the condition of the cell and was told he needed to "learn some respect for authority." (ECF No. 1 at 5, 10.)

From March 28, 2013 through April 10, 2013, officers under Riley's command refused to give plaintiff lunch on a daily basis. From March 28 through April 16, defendants Cox and Loftin threw plaintiff's breakfast and dinner trays into his cell each day. (ECF No. 1 at 6.)

On April 4, 2013, plaintiff attended an Institutional Classification Committee ("ICC") hearing, which was also attended by defendant Warden Foulk. He informed Foulk about his meals and about officers throwing the food trays. He also told Foulk he felt like he had been

2

moved in retaliation and that his cell was filthy. Foulk told him that if he did not like his treatment, he should file a grievance. Foulk took no action to intervene on plaintiff's behalf and the problems with his food and trash continued. (ECF No. 1 at 8.)

On April 7, 2013, plaintiff had sharp stomach pains, causing him to vomit. He states that he asked defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Riley for help and all "taunt[ed]" him and "berate[d] him for asking." They prevented plaintiff from getting medical attention by disposing of his sick call slips and ignoring his pleas for help. On April 14, 2013, plaintiff went "man down" in his cell and was taken to the HDSP doctor for his stomach and back pains and "constant vomiting." Plaintiff states that the results of tests showed he had "h-pylori bacteria" in his system, which, plaintiff contends, is contracted from eating unsanitary food or living in unsanitary conditions. Plaintiff suffered stomach pains and occasional bouts of vomiting for months afterwards. (ECF No. 1 at 9, 22.) He also alleges he suffers severe headaches. (Id. at 34.)

Plaintiff states that he suffered back pain from being forced to sleep on the thin piece of a mattress for five months. According to plaintiff, he went on a hunger strike that resulted in getting a full size mattress on July 10, 2013. (ECF No. 1 at 9.)

Starting around April 16, 2013, Cox and Loftin stopped throwing the food trays. However, plaintiff noticed foreign objects in his food such as leaves, trash, and rocks. While he was picking through the food, Cox and Loftin would watch and laugh to each other. The food was always "ice cold." Other officers would occasionally attempt to give plaintiff a lunch sack, only to be stopped by defendant Loftin who would tell them, "he don't get no lunch." (ECF No. 1 at 6-7.)

Plaintiff told Riley about the problems with food tampering but Riley ignored it. Riley was often present when Cox and Loftin threw plaintiff's food trays into his cell. (ECF No. 1 at 7, 21.) Plaintiff also alleges defendant Foulk was aware of the food tampering. (Id. at 17.)

For four weeks, defendants Riley, Cox, Loftin, Witcheal, Wong, and Madrigal refused to let plaintiff throw out his trash; refused to allow him to shower; refused to provide him clean clothing; refused to give him hygienic supplies, including toilet paper; and refused to give him

3

grievance ("602") forms. Plaintiff was allowed no yard time during these four weeks. (ECF No. 1 at 7, 18.) Later in his complaint, plaintiff contends he was refused yard time for "months." (Id. at 25.)

On April 24, 2013, defendant Cox wrote a false infraction report accusing plaintiff of destroying the mattress in his cell and charging plaintiff $44.00. Plaintiff contends defendant Riley was involved in preparing this false report as well. When defendant Holmes gave plaintiff the infraction report, plaintiff told Holmes that he would not sign anything admitting that he had damaged the mattress. Holmes responded that plaintiff "should have thought about that before he went crying to the counselor." When defendants Holmes and Loftin saw that plaintiff was attempting to take a 602 form with him to the infraction hearing for the damaged mattress, they refused to let him attend the hearing. As a result, plaintiff was found guilty of damaging the mattress and his trust account was frozen, preventing him from purchasing hygiene items, paper, stamps, and food. Plaintiff contends the refusal to allow him to attend the hearing was retaliation for his attempt to submit a 602 form. (ECF No. 1 at 11-13, 26-28.)

After plaintiff was in C section for a month, the prison starting moving other people into the nearby cells. Plaintiff was able get 602 forms from these newly-arrived prisoners. However, each time he attempted to turn one in, it was ripped up by one of "the defendants aforementioned herein" after they had read the form. (ECF No. 1 at 12-13.) Plaintiff further alleges that defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Holmes conspired to, and did, destroy his correspondence to the Director of CDCR, the U.S. Department of Justice, the CDCR Internal Affairs Office, the Inspector General's Office, and high ranking prison officials. He also claims they destroyed his incoming mail, which included paper, stamps, envelopes, and family pictures. (Id. at 30-31.) He contends defendants Foulk and Riley knew about the destruction of his mail and failed to stop it. (Id. at 31-32.)

Plaintiff also states defendants destroyed his mail and falsely charged him $13.00 for a prison book that he did not check out from the library. He contends these actions were also done in retaliation for voicing his complaints to counselor Jane Doe. (ECF No. 1 at 14-15.)

////

Plaintiff informed defendant Jane Doe, a counselor, about this problems on April 28 or 29, 2013. She refused to help him. When plaintiff told her he could not file a 602 form because officers refused to provide him one, she also refused to give him a form. After that, plaintiff's food portions were reduced dramatically and he lost weight. Every time he left his cell, defendants Cox, Loftin, or Riley would enter it and "trash" plaintiff's possessions, including his pain medication. (ECF No. 1 at 10-11, 23.) Plaintiff contends they destroyed his pain medication to cause him more pain and suffering. (Id. at 23.) Plaintiff contends defendants Riley and Foulk were aware of the destruction of his medication and failed to stop it. (Id. at 24.)

Plaintiff alleges that defendants' actions were "retaliatory" because defendants were punishing plaintiff for his "alleged" assault on an officer at PBSP and for complaining about his prison conditions. (ECF No. 1 at 16-34.)

In addition to the physical injuries set out above, plaintiff claims he suffered severe emotional and mental distress as a result of defendants' actions. (ECF No. 34.) Plaintiff seeks declaratory relief, compensatory damages, punitive damages, and an injunction for adequate medical care. (ECF No. 1 at 35.)

## II. Procedural Background

This case is proceeding on plaintiff's original complaint filed here on October 6, 2014. (ECF No. 1.) On screening, the court found plaintiff stated the following potentially cognizable claims regarding the conditions of his confinement at HDSP: (1) First Amendment retaliation claims against all defendants; (2) Eighth Amendment claims based on the mishandling of plaintiff's food against defendants Cox, Foulk, Loftin, and Riley; (3) Eighth Amendment claims based on plaintiff's living conditions against defendants Cox, Foulk, Loftin, Madrigal, Riley, Witcheal, and Wung; and (4) Eighth Amendment claims regarding plaintiff's serious medical needs against Cox, Loftin, Madrigal, Riley, Witcheal, and Wung. (ECF No. 14.) On June 9, 2016, defendants Cox, Foulk, Holmes, Loftin, Madrigal, Witcheal, and Wung filed an answer to the complaint. (ECF No. 30.) On November 14, 2016, defendant Riley filed an answer. (ECF No. 45.)

////

On June 26, 2016, all defendants filed the present motion for summary judgment. (ECF No. 80.) Plaintiff filed an opposition. (ECF No. 89.) Defendants filed a reply. (ECF No. 92.) Plaintiff filed an additional brief on October 27, 2017. (ECF No. 94.) Defendants moved to strike that "sur-reply." (ECF No. 95.)

**MOTION FOR SUMMARY JUDGMENT**

Defendants contend: (1) the undisputed facts show that plaintiff did not exhaust his administrative remedies prior to filing this suit; (2) plaintiff fails to establish all of the elements of a retaliation claim; (3) plaintiff has not shown a triable issue of material fact with respect to his claims against Foulk, Witcheal, Madrigal, Wung, and Riley that his food was tainted and inadequate; (4) plaintiff's allegations do not establish claims against Foulk, Witcheal, Madrigal, and Wung that the conditions of his confinement violated the Eighth Amendment; and (5) plaintiff has not established a claim for deliberate indifference to a serious medical need.[1] Finally, defendants contend they are entitled to qualified immunity on the conditions of confinement claims. (ECF No. 80-1.)

Plaintiff states that he submitted his administrative appeals to the third level of review and argues that his claims cannot be resolved on summary judgment because there are disputed issues of material fact.

The Ninth Circuit Court of Appeals has held that, where feasible, courts should reach the issue of administrative exhaustion prior to deciding the merits of a suit. Albino v. Baca, 747 F.3d 1162, 1170-71 (9th Cir. 2014). Because, as set out below, this court finds there are material issues of fact on the issue of exhaustion, at this juncture it is not necessary, or advisable, to address the merits issues raised in defendants' motion. The court will recommend defendants' motion for summary judgment on the merits of plaintiff's claims be denied without prejudice.

////

---

[1] In their reply brief, defendants concede that plaintiff has some actionable claims. (ECF No. 92 at 5-6.) Defendants state that plaintiff's claim regarding the quality and quantity of his food should proceed against only defendants Cox and Loftin. He further states that his claim regarding the conditions of his confinement should proceed against only Cox, Loftin, and Riley. However, defendants also contend they are entitled to qualified immunity from the conditions claim.

I.     **Legal Standards**

   **A. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of

affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the

opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

////

////

9

## C. Legal Standards for Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth, 532 U.S. at 738. If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

### 2. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. §3084.7(d)(3).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183

(9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b)**.**

## II. Material Facts

### A. Statements of Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 80-2.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff's opposition to the summary judgment motion includes a "declaration" (ECF No. 89 at 1-13), a "statement of disputed factual issues" (id. at 14-16), and a "brief" (id. at 17-20.) In addition, plaintiff submitted a description of his exhibits (id. at 21-24) and over 500 pages of exhibits (id. at 25-547).

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendants' DSUF or has shown facts that are not opposed by defendants. The court considers the statements plaintiff made in his verified complaint and of which he has personal knowledge. A complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th

Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

In plaintiff's complaint, his signature follows the statement "Plaintiff Raul Garcia declare and verify under penalty of perjury . . . that the foregoing is true and correct . . . ." (ECF No. 1 at 36.) It therefore qualifies as a verified complaint under 28 U.S.C. § 1746 and, to the extent it alleges specific facts from plaintiff's personal knowledge, it carries the same weight as an affidavit proffered to oppose summary judgment. See Keenan v. Hall, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (mem.). The court has also reviewed plaintiff's opposition to the summary judgment motion and his sworn testimony given at his deposition. (See ECF No. 81 (Defs.' Notice of Lodging Depo. Trscrpt.).)

**B. Undisputed Material Facts**

At all relevant times, plaintiff was a prisoner incarcerated within the CDCR. (DSUF (ECF No. 80-2) #1.) Plaintiff was transferred from PBSP to HDSP on the evening of March 27, 2013, arriving at HDSP in the early morning hours of March 28, 2013.[2] Plaintiff was transferred after being accused of the attempted murder of a correctional officer at PBSP. (Id. #3.)

The conduct that is the subject of the present case occurred at HDSP. (Id. #2.) On the date he arrived at HDSP, plaintiff was initially housed in cell number 112 of Z Unit and,

---

[2] In their brief and in the DSUF, defendants refer to plaintiff's transfer date as May 27, 2013. In the answer, defendants refer to plaintiff's arrival at HDSP as occurring in the early morning hours of March 23, 2013. (ECF No. 30 at 2, ¶7.) However, records provided by the parties indicate that the correct date is the March 27-28, 2013 date cited by plaintiff in his complaint. (See ECF No. 1 at 4, ¶¶9-10.) In fact, defendants state that they admit the fact of the March 27 date in their answer. (ECF No. 30 at 2, ¶6.) The court assumes defendants' references to the March 23 and May 27 dates were made in error.

13

sometime later that day, was moved to cell number 129 of Z Unit. (Comp. (ECF No. 1 at 4-5, ¶¶ 10, 15; Answ. (ECF No. 30 at 2, ¶ 9).) According to plaintiff, cell 129 was in a different section of Z Unit from cell 112. Cell 129 was in the "C Section." (ECF No. 1 at 5, ¶ 15.) In April 2013, while at HDSP, plaintiff contracted an H-Pylori bacterial infection. (Id. at 9, ¶ 33.)

Defendant Cox wrote a rules violation report ("RVR") charging plaintiff with damaging his mattress. (Comp. (ECF No. 1 at 11, ¶ 43); Answ. (ECF No. 30 at 3, ¶ 19).) Plaintiff was found guilty of the rules violation for having a damaged mattress and a hold was placed on his ability to purchase canteen items. (Comp. (ECF No. 1 at 13, ¶¶ 53, 54); Answ. (ECF No. 30 at 3, ¶ 21).)

Defendants provide the declaration of M. Voong, Chief of the Office of Appeals for CDCR. (ECF No. 80-3.) The Office of Appeals renders decisions on all California prisoner's non-medical appeals at the third level of review. (Id. at 2, ¶ 6.) Voong describes the appeals process. He or she states that if an appeal is "screened out," its substance has not been considered. In that situation, the inmate receives notice of the reasons why the appeal was not considered. (Id. at 2, ¶ 4.) If an appeal is cancelled, the inmate is notified of the reasons why, but that appeal may not be resubmitted. (Id. at 2, ¶ 5.) Rather, the inmate must file a new appeal on the same subject. If an appeal is rejected, the inmate is notified and given the opportunity to resubmit the appeal. (Id.)

Voong states that all appeals that are accepted for review at the third level or that are screened out at that level are logged into a computerized databased called the Inmate Parolee Appeals Tracking System – Level III. (ECF No. 80-3 at 2, ¶ 6.) Voong accessed this computerized record for plaintiff's appeals filed at the Office of Appeals. Attached to his declaration is a copy of the computer printout with four appeals shown on the tracking system.[3] (Id. at 2, ¶¶ 7-8.) One appeal is from 2009 at PBSP, two are from 2014 when plaintiff was

////

---

[3] Plaintiff states that he exhausted his claims herein when he mailed a 602 form directly to the third level of review. At plaintiff's request, in April 2016, CDCR provided plaintiff a list of the appeals he had filed through the third level of review. (Ex. E to Plt's Oppo. (ECF No. 89 at 177).) The list is the same as that attached to Voong's Declaration and described in the text.

14

incarcerated at CSP-Corcoran, and the fourth is an October 2013 appeal that was screened out and does not have further descriptive information.

The 2009 appeal occurred prior to the events in this case and is therefore not relevant. Voong describes the two 2014 appeals that were accepted for review at the third level and rejected. In one, appeal #COR-13-07870, plaintiff complained about his single-cell status. (Id. at 3, ¶ 10; Ex. B to Voong Decl. (ECF No. 80-3 at 8-23).) In the second 2014 appeal, #COR-14-01179, plaintiff complained about a "personal clothing issue" involving the removal of a the drawstring from his shorts. (ECF No. 80-3 at 2, ¶ 11; Ex. C to Voong Decl. (ECF No. 80-3 at 24-39).)

The 2013 appeal that was screened out does not state where it originated. However, the computer record shows that it was received by the Office of Appeals on September 25, 2013. (Ex. A to Voong Decl. (ECF No. 80-3 at 6).) It appears that plaintiff was incarcerated at HDSP from March 28, 2013 through October 30, 2013. (See Plt.'s Depo. at 76:1-2.) Therefore, it can be inferred that this appeal was sent by plaintiff when he was incarcerated at HDSP. Voong states that when an appeal is screened out, that fact is recorded, but the underlying copy of the appeal itself is not retained. (ECF No. 80-3 at 3, ¶ 9.) According to the computer printout, this appeal involved a disciplinary matter and was screened out because it had not been submitted to the lower levels of review. (Id. at 3, ¶ 9 & n. 1; Ex. A to Voong Decl. (ECF No. 80-3 at 5-6).)

The parties agree that plaintiff has never had an administrative appeal of the issues herein reviewed at all three levels of review. (DSUF (ECF No. 80-2) #13; Plt.'s Oppo. (ECF No. 89 at 3).)

### III.  Analysis of Exhaustion Defense

Defendants' initial burden of proof requires a showing that HDSP had a grievance system that was available to plaintiff and that plaintiff failed to properly file grievances. See Albino, 747 F.3d at 1171-72. Defendants present no evidence to meet this burden. In similar situations, some courts have found the defendants failed to meet their initial burden on the issue of exhaustion. See Ramos v. Swatzell, No. CV 12-01089 BRO (SPx), 2015 WL 13157319, at *6 (C.D. Cal. Feb. 12, 2015) (Where the applicable California regulations were the only evidence that defendants

15

presented to demonstrate that there was an available administrative remedy, "defendants have failed to meet their initial burden under Albino."), aff'd on other grounds, 669 F. App'x 486 (9th Cir. 2016).

However, the record shows that other inmates at HDSP were able to submit CDCR 602 grievance forms, and plaintiff does not dispute that the prison did, in fact, have a grievance system. Because the court finds below that plaintiff has met his burden of showing unavailability of the grievance system, the court will assume, for purposes of this motion, that defendants met their initial burden on the issue of availability. With respect to plaintiff's failure to properly file grievances, that fact is undisputed.

The burden then shifts to plaintiff. He has met his burden of showing the grievance system was unavailable to him. In his sworn statement, plaintiff states that: (1) he asked Riley, Cox, Loftin, Witcheal, Wong, and Madrigal for copies of 602 forms; (2) those six officers refused to provide him 602 forms for four weeks; and (3) the 602 forms he was able to obtain from other inmates and attempted to submit were destroyed by defendants. (Compl. (ECF No. 1 at 7, 12-13).) Plaintiff further contends that he prepared some CDCR 602 grievance forms regarding the condition of his cell and regarding the mishandling of his meals, but those forms were destroyed by defendants Holmes, Cox, and Loftin. (Id. at 11-13; Plt.'s Depo. at 66, 144.) Plaintiff also specifically states that he had a 602 form in his hand when defendants Holmes and Loftin took him from his cell to escort him to the RVR hearing regarding the charge that he had damaged his mattress. When Holmes and Loftin saw that plaintiff was holding a 602 form, they took it from him, ripped it up, and refused to allow him to attend the RVR hearing. (Compl. (ECF No. 1 at 12).)

Plaintiff states that he also submitted CDCR 22 forms, forms used when an inmate requests an interview, to defendant Foulk regarding his inability to submit a 602 form. (Plt.'s Depo. at 62.) Plaintiff states that he got a copy of a form 22 from another inmate and had another inmate submit it for him. (Id. at 64.) In his responses to plaintiff's request for production of documents, defendant Foulk states that he does not recall receiving a CDCR 22 form from plaintiff. (Ex. B to Plt.'s Oppo. (ECF No. 89 at 150).) Where a prisoner has been refused 602

forms or where the forms he attempted to submit were destroyed by prison official, exhaustion may be excused. See Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).

Defendants do little to counter plaintiff's statements about the unavailability of the grievance system to him. Defendants simply argue that statements made by plaintiff and evidence provided by plaintiff show he had access to the grievance system. Defendants point to plaintiff's alleged submission of a CDCR 22 form as evidence that he had access to the grievance system and to his submission of an appeal directly to the third level of review as evidence that his mail was not being destroyed.

Defendants' points are hardly sufficient evidence to support summary judgment in their favor for several reasons. First, plaintiff claims he was only able to submit that CDCR 22 form by giving it to another inmate who, plaintiff believes, submitted it for him. Second, the fact that one legal document may have been successfully mailed does not necessarily mean plaintiff's other mail was not tampered with. Third, plaintiff had only thirty days to submit appeals. See Cal. Code Regs. tit. 15, § 3084.8(b). He complains about conduct that occurred primarily in March and April 2013. His appeal mailed to the Office of Appeals was not received until September 2013, well after the thirty day-period for complaining about officers' conduct in March and April. Even if he could have submitted a 602 appeal at that point, he was not required to take action that would have been futile.

Similarly, defendants arguments that plaintiff had access to lock boxes to submit appeals is not only unsupported by relevant evidence, it is contradicted by the evidence before the court. Defendants rely on a memorandum dated December 30, 2011 that was attached as an appendix to a 2015 Special Review of HDSP conducted by California's Inspector General. Plaintiff attached this Inspector General's report to his opposition as exhibit A. (See ECF No. 89 at 27-145.) In that memorandum, the CDCR's Director of Adult Institutions instructed the wardens of those institutions to institute a lock-box program by April 2012 so that inmates could confidentially submit appeals. (ECF No. 89 at 100-101.) What defendants, rather astonishingly, ignore is the fact that the 2015 report states that HDSP failed to implement the required lock-box program. (See id. at 58.) The report further notes that even where lock boxes are available, inmates housed

17

in administrative segregation, where plaintiff was housed, do not have the ability to personally deposit their appeals in a lock box. And, the report devotes an entire section to the problems prisoners at HDSP faced in trying to submit appeals. (Id. at 58-64.) Defendants attempt to imply that plaintiff had access to lock boxes and could have easily submitted an appeal is not well taken.

Defendants' argument that inmate Ponce, who plaintiff claims was also mistreated at HDSP, was able to submit appeals is also irrelevant. Defendants do not show that Ponce was housed in the same area plaintiff was housed or that the same correctional officers dealt with Ponce.

Defendants have the burden of presenting some evidence in support of their summary judgment motion. See Williams, 775 F.3d at 1192 ("[D]efendants may not simply rely on the existence of an administrative review process to overcome a prisoner's showing that administrative remedies were not available to him."). As the movants, defendants "were on notice of the need to come forward with all their evidence in support of this motion." Hammler v. Davis, No. 2:14-cv-2073 MCE AC P, 2017 WL 735737, at *10 (E.D. Cal. Feb. 23, 2017), rep. and reco. adopted, 2017 WL 1093968 (E.D. Cal. Mar. 23, 2017); see also Garland v. Cal. Dept. of Corrs., No. 2:16-cv-1856 JAM AC P, 2017 WL 2833395, at *7 (E.D. Cal. June 30, 2017), rep. and reco. adopted, No. 2:16-cv-1856 (E.D. Cal. Sept. 29, 2017). By failing to present evidence to oppose plaintiff's assertion that administrative remedies were unavailable to him, defendants failed to even attempt to meet their burden on the exhaustion issue.

The court is required on summary judgment to consider the evidence in the light most favorable to plaintiff. By that standard, the court must accept as true plaintiff's sworn statement that the grievance system was unavailable to him and find that defendants have failed to create a dispute on this factual issue. In this situation, the court is tempted to find that summary judgment in plaintiff's favor is appropriate because defendants have failed to meet their burden of proof on the exhaustion defense. In Hammler, the court did just that. The court noted that the defendant failed to provide any rebuttal evidence in his reply to plaintiff's opposition to the summary judgment motion on exhaustion despite the fact that evidence was solely in the knowledge and control of prison officials. 2017 WL 735737, at *11. Because the defendant failed to create a

triable issue of fact regarding exhaustion, summary judgment for the plaintiff was appropriate. Id. (citing Albino, 747 F.3d at 1176). The judge in Garland also so held. 2017 WL 2833395, at **7-8 ("Because administrative exhaustion is an affirmative defense, and because the evidence presented on summary judgment must be viewed in the light most favorable to the nonmoving party, the record in this case compels the conclusion that defendants have failed to meet their burden on the exhaustion issue.").

In the present case, the court recognizes that the record contains no evidence to support plaintiff's statements and most of his assertions lack specificity. When confronted with a similar situation, the Ninth Circuit ordered a remand for the development of facts concerning exhaustion. Williams, 775 F.3d at 1192. This court therefore finds an evidentiary hearing is appropriate to allow both parties to present evidence regarding the availability of administrative remedies to plaintiff. It follows, of course, that defendants should not be awarded summary judgment based on their contention that plaintiff failed to exhaust his administrative remedies prior to filing suit.

**MOTION TO STRIKE SUR-REPLY**

After defendants filed their reply brief, on October 27, 2017, plaintiff filed a response or "sur-reply." (ECF No. 94.) Defendants moved to strike that sur-reply. (ECF No. 95.) Plaintiff did not file an opposition to their motion. When a motion is filed, Local Rule 230(l) provides that the non-moving party may file an opposition and the moving party may file a reply to the opposition. There is no provision in the local rules or in the Federal Rules of Civil Procedure that allows the non-moving party to file a reply, response, or sur-reply without a court order. Plaintiff's October 27, 2017 sur-reply is therefore unauthorized and should be stricken.

**CONCLUSION**

For the reasons set forth above, the court will recommend defendants' motion for summary judgment be denied. Defendants request that, should the court deny summary judgment, a hearing on the exhaustion issue be held prior to a trial of plaintiff's claims on the merits. In Albino, 747 F.3d at 1170, the Court of Appeals stressed that the issue of exhaustion should be decided early in the proceeding. The court further indicated that the issue should be determined by a judge, not by a jury. Id. at 1170-71. Because resolution of the exhaustion issue

will require determinations of the credibility of witnesses, this court recommends that such a hearing be scheduled at the court's earliest convenience. Further, because this case involves complex issues and because plaintiff's claims appear to have some merit, the court recommends that counsel be appointed to represent plaintiff in that proceeding. See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 80) be denied on the issue of exhaustion and denied without prejudice on the merits;
2. Defendants' motion to strike the sur-reply (ECF No. 95) be granted;
3. The court schedule an evidentiary hearing on the exhaustion issues identified above; and
4. The court appoint counsel for plaintiff.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 26, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/garc2378.msj exh