1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAUL GARCIA,                           No.  2:14-cv-2378 JAM DB P

12                    Plaintiff,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   F. FOULK, et al.,

15                    Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action under 42 U.S.C. § 1983.  Plaintiff alleges defendants violated his Eighth Amendment

19   rights by subjecting him to inhumane conditions of confinement and retaliated against him for

20   exercising his First Amendment rights.  Before the court is defendants' motion for summary

21   judgment.  For the reasons set forth below, the undersigned recommends the motion be granted in

22   part and denied in part.

23                              **BACKGROUND**

24   **I. Allegations in the Complaint**

25        Plaintiff is an inmate at Pelican Bay State Prison ("PBSP").  The conduct which is the

26   subject matter of his complaint occurred when he was incarcerated at High Desert State Prison

27   ("HDSP").  Plaintiff identifies the following defendants: (1) F. Foulk, Warden; (2) Riley,

28   ////

                                        1

Supervising Custodial Officer; (3) Correctional Officer ("CO") D. Cox; (4) CO K. Loftin; (5) CO Witcheal; (6) CO Wung; (7) CO Madrigal; and (8) CO Holmes.  (ECF No. 1 at 2-3.)

Plaintiff alleges that on March 27, 2013, he was transported from PBSP to HDSP after he was charged with attempted murder of a PBSP correctional officer.  On his first morning at HDSP, two unnamed officers flung a food tray into his cell, hitting plaintiff's body and causing the food to fall to the floor.  Defendant Sergeant Riley observed the incident.  Riley told plaintiff to clean up the food; plaintiff refused; and Riley told plaintiff he would be moved to another cell.  (ECF No. 1 at 4.)

Later that day, Riley returned with two officers.  They moved plaintiff to a cell in the C-section of Z Unit.  Plaintiff alleges the area smelled of urine and had carts of trash and dirty clothes laying around.  Plaintiff saw no other prisoners in the surrounding cells until about a month later.  He contends he was the only prisoner in C-section for that month.  He was placed in cell #129.  The sink and toilet were covered in "filth," "dirt," and "rust."  The mattress was only a thin piece of a mattress on a concrete bunk; plaintiff estimates it was less than half the thickness of a standard mattress.  It was ripped and dirty.  Plaintiff states he complained to Riley about the condition of the cell and was told he needed to "learn some respect for authority."  (ECF No. 1 at 5, 10.)

From March 28, 2013 through April 10, 2013, officers under Riley's command refused to give plaintiff lunch.  From March 28 through April 16, defendants Cox and Loftin threw plaintiff's breakfast and dinner trays into his cell each day.  (ECF No. 1 at 6.)

On April 4, 2013, plaintiff had an I.C.C.[1] hearing with defendant Warden Foulk.  He informed Foulk about his meals and about officers throwing the food trays.  He also told Foulk he felt like he had been moved in retaliation and that his cell was filthy.  Foulk told him that if he did not like his treatment, he should file a grievance.  Foulk took no action to intervene on plaintiff's behalf and the problems with his food and trash continued.  (ECF No. 1 at 8.)

////

---

[1] "I.C.C." is the Institutional Classification Committee.

On April 7, 2013, plaintiff had sharp stomach pains, causing him to vomit.  He states that he asked defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Riley for help and all "taunt[ed]" him and "berate[d] him for asking."  They prevented plaintiff from getting medical attention by disposing of his sick call slips and ignoring his pleas for help.  On April 14, 2013, plaintiff went "man down" in his cell and was taken to the HDSP doctor for his stomach and back pains and "constant vomiting."  Plaintiff states that the results of tests showed he had "h-pylori bacteria" in his system, which is contracted from eating unsanitary food or living in unsanitary conditions.  Plaintiff suffered stomach pains and occasional bouts of vomiting for months afterwards. (ECF No. 1 at 9, 22.)  He also alleges he suffers severe headaches.  (Id. at 34.)

Plaintiff states that he suffered back pain from being forced to sleep on the thin piece of a mattress for five months.  According to plaintiff, he went on a hunger strike that resulted in getting a full-size mattress on July 10, 2013.  (ECF No. 1 at 9.)

Starting around April 16, 2013, Cox and Loftin stopped throwing the food trays.  However, plaintiff noticed foreign objects in his food such as leaves, trash, and rocks.  While he was picking through the food, Cox and Loftin would watch and laugh to each other.  The food was always "ice cold."  Other officers would occasionally attempt to give plaintiff a lunch sack, only to be stopped by defendant Loftin who would tell them, "he don't get no lunch."  (ECF No. 1 at 6-7.)

Plaintiff told Riley about the problems with food tampering, but Riley ignored it.  Riley was often present when Cox and Loftin threw plaintiff's food trays into his cell.  (ECF No. 1 at 7, 21.)  Plaintiff also alleges defendant Foulk was aware of the food tampering.  However, plaintiff does not explain why that is so.  (Id. at 17.)

For four weeks, defendants Riley, Cox, Loftin, Witcheal, Wong, and Madrigal refused to let plaintiff throw out his trash; refused to allow him to shower; refused to provide him clean clothing; refused to give him hygienic supplies, including toilet paper; and refused to give him grievance ("602") forms.  Plaintiff was allowed no yard time during these four weeks.  (ECF No. 1 at 7, 18.)  Later in his complaint, plaintiff contends he was refused yard time for "months."  (Id. at 25.)

3

On April 24, 2013, defendant Cox wrote a false infraction report accusing plaintiff of destroying the mattress in his cell and charging plaintiff $44.00. Plaintiff contends defendant Riley was involved in preparing this false report as well. When plaintiff told Holmes that he would not sign anything admitting that he had damaged the mattress, Holmes responded that plaintiff "should have thought about that before he went crying to the counselor." When defendants Holmes and Loftin saw that plaintiff was attempting to take a 602 form with him to the infraction hearing for the damaged mattress, they refused to let him attend the hearing. As a result, plaintiff was found guilty of damaging the mattress and his trust account was "frozen," preventing him from purchasing hygiene items, paper, stamps, and food. Plaintiff contends the refusal to allow him to attend the hearing was done in retaliation for his attempt to submit a 602 form. (ECF No. 1 at 11-13, 26-28.)

After plaintiff was in C section for a month, the prison began moving other people into the nearby cells. Plaintiff was able to get 602 forms from these newly arrived prisoners. However, each time he attempted to turn one in, it was ripped up by one of "the defendants aforementioned herein" after they had read the form. (ECF No. 1 at 12-13.) Plaintiff further alleges that defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Holmes conspired to, and did, destroy his correspondence to the Director of CDCR, the U.S. Department of Justice, the CDCR Internal Affairs Office, the Inspector General's Office, and high-ranking prison officials. He also claims they destroyed his incoming mail, which included paper, stamps, envelopes, and family pictures. (Id. at 30-31.) He contends defendants Foulk and Riley knew about the destruction of his mail and failed to stop it. (Id. at 31-32.)

Plaintiff also states defendants destroyed his mail and falsely charged him $13.00 for a prison book that he did not check out from the library. He contends these actions were also done in retaliation for voicing his complaints to counselor Jane Doe. (ECF No. 1 at 14-15.)

Plaintiff informed defendant Jane Doe, a counselor, about these problems on April 28 or 29, 2013. She refused to help him. When plaintiff reported he could not file a 602 form because officers refused to provide him one, she also refused to give him a form. After that, plaintiff's food portions were dramatically reduced, and he lost weight. Every time he left his cell,

1  defendants Cox, Loftin, or Riley would enter it and "trash" plaintiff's possessions, including his

2  pain medication. (ECF No. 1 at 10-11, 23.) Plaintiff contends they destroyed his pain medication

3  to cause him more pain and suffering. (Id. at 23.) Plaintiff contends defendants Riley and Foulk

4  were aware of the destruction of his medication and failed to stop it. (Id. at 24.)

5      Plaintiff alleges the actions of defendants was "retaliatory" because defendants were

6  punishing plaintiff for his "alleged" assault on an officer at PBSP and for complaining about his

7  prison conditions. (ECF No. 1 at 16-34.)

8      In addition to the physical injuries set out above, plaintiff claims he has suffered severe

9  emotional and mental distress as a result of defendants' actions. (ECF No. 34.) Plaintiff seeks

10  declaratory relief, compensatory damages, punitive damages, and an injunction for adequate

11  medical care. (ECF No. 1 at 35.)

12  **II. Procedural History**

13      This case is proceeding on plaintiff's original complaint filed here on October 6, 2014.

14  (ECF No. 1.) On screening, the court found plaintiff stated the following potentially cognizable

15  claims regarding the conditions of his confinement at HDSP: (1) First Amendment retaliation

16  claims against all defendants; (2) Eighth Amendment claims based on the mishandling of

17  plaintiff's food against defendants Cox, Foulk, Loftin, and Riley; (3) Eighth Amendment claims

18  based on plaintiff's living conditions against defendants Cox, Foulk, Loftin, Madrigal, Riley,

19  Witcheal, and Wung; and (4) Eighth Amendment claims regarding plaintiff's serious medical

20  needs against Cox, Loftin, Madrigal, Riley, Witcheal, and Wung. (ECF No. 14.) On June 9,

21  2016, defendants Cox, Foulk, Holmes, Loftin, Madrigal, Witcheal, and Wung filed an answer to

22  the complaint. (ECF No. 30.) On November 14, 2016, defendant Riley filed an answer. (ECF

23  No. 45.)

24      On June 26, 2016, all defendants filed their first motion for summary judgment. In

25  January 2018, this court recommended defendants' motion be denied on the exhaustion issues and

26  denied without prejudice on the merit issues. (ECF No. 96.) On March 30, 2018, Judge Mendez

27  adopted the findings and recommendations. (ECF No. 104.) He referred the case to the

28  undersigned for an evidentiary hearing on the exhaustion issues.

On October 22, 2018, this court held an evidentiary hearing.  (See ECF No. 121.)  In April 2019, this court issued findings and recommendations in which it recommended that the court find plaintiff satisfied the exhaustion requirement because his administrative remedies were effectively unavailable to him.  (ECF No. 123.)  On October 8, 2019, Judge Mendez adopted that recommendation.  (ECF No. 146.)

On June 27, 2019, defendants filed a second motion for summary judgment on the merits of plaintiff's claims.  (ECF No. 135.)  Plaintiff filed an opposition (ECF No. 142) and, later, filed two exhibits (ECF Nos. 144, 147).  Defendants filed a reply.  (ECF No. 143.)  Plaintiff filed a sur-reply.  (ECF No. 145.)  This court granted defendants' motion to strike that sur-reply.  (ECF Nos. 148, 150.)  However, this court denied defendants' motion to strike the late-filed exhibits.  Defendants were given the opportunity to file a supplement to their reply brief to address those exhibits.  They did so.  (ECF No. 151.)

The first late-filed exhibit submitted by plaintiff is a declaration from his father in Spanish that plaintiff translates.  (ECF No. 144 at 3-4.)   Assuming plaintiff's translation is correct, his father states that he sent plaintiff mail that, he discovered later, plaintiff never received.  However, in his complaint plaintiff failed to sufficiently allege who bore responsibility for the interference with his mail.  Plaintiff's claims regarding the processing of his mail did not survive screening.  Plaintiff has not provided any additional evidence or allegations to support a claim regarding his mail against any defendant.  Moreover, plaintiff's father's declaration is not based on personal knowledge with respect to plaintiff's non-receipt of letters.  See Fed. R. Civ. P. 56(c)(4) (declarations submitted in support of or opposition to summary judgment motion must be made on personal knowledge).  This court finds plaintiff fails to state a claim regarding interference with his mail and will not consider plaintiff's father's declaration.

The second late-filed exhibit is plaintiff's attempt to show why the court should consider plaintiff's prior submission of an unsigned declaration from inmate Daniel Desales.  (ECF No. 147.)  Plaintiff indicates he is submitting a signed copy of Desales' declaration.  However, the copy attached to plaintiff's filing does not include the second page, which would presumably have the signature.  Further, Desales' statements are hearsay.  This court will not consider this

declaration either.  <u>See</u> 28 U.S.C. § 1746 (to be considered as evidence, declaration must be signed and sworn under penalty of perjury); Fed. R. Civ. P. 56(c)(4) (declarations must "set out facts that would be admissible in evidence" to be considered on summary judgment).  This court notes that even if it did consider Desales' declaration, it would not change its analysis of the issues below.

### MOTION FOR SUMMARY JUDGMENT

Defendants contend that plaintiff has failed to create triable issues of fact regarding his claims for retaliation, mishandling of food, inhumane conditions of confinement, and deliberate indifference to his medical needs.  Defendants further contend they are entitled to qualified immunity as to plaintiff's conditions of confinement claims.  Plaintiff argues that his claims cannot be resolved on summary judgment because there are disputed issues of material fact.

This court notes that defendants have submitted no evidence to contradict plaintiff's allegations.  Rather, they focus primarily on the argument that plaintiff's allegations and evidence are inadequate to support all necessary aspects of his claims.  This tact may be sufficient to support a summary judgment motion, <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  However, plaintiff need only show the existence of credible evidence that could, if proved, result in success on his claims to defeat a summary judgment motion.

## I. Legal Standards Applicable to all Claims

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  <u>In re Oracle Corp. Sec. Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex</u>, 477 U.S. at 323). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact

8

that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution .

. . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II. Material Facts**

**A. Statements of Facts**

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 135-2.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff's opposition to the summary judgment motion includes a Brief (ECF No. 142), a Declaration (ECF No. 142-1), and a Statement of Disputed Factual Issues (ECF No. 142-2). In ////

addition, plaintiff submitted a description of his exhibits (ECF No. 142 at 8-11) and over 500 pages of exhibits (id. at 12-553).

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendants' DSUF or has shown facts that are not opposed by defendants. The court considers the statements plaintiff made in his verified complaint, in his sworn declaration, at his deposition,[2] in filings in opposition to the prior summary judgment motion, and of which he has personal knowledge.

Below, the court sets out the undisputed material facts. The facts in dispute are discussed in the analysis of each claim in the following section.

### B. Undisputed Material Facts

At all relevant times, plaintiff was a prisoner incarcerated within the CDCR. (DSUF (ECF No. 135-2) #1.) Plaintiff was transferred from PBSP to HDSP on the evening of March 27, 2013, arriving at HDSP in the early morning hours of March 28, 2013.[3] Plaintiff was transferred after being accused of the attempted murder of a correctional officer at PBSP. (Id. #3.) The conduct that is the subject of the present case occurred at HDSP. (Id. #2.) On the date he arrived at HDSP, plaintiff was initially housed in cell number 112 of Z Unit and, sometime later that day, was moved to cell number 129 of Z Unit. (Comp. (ECF No. 1 at 4-5, ¶¶ 10, 15); Answ. (ECF No. 30 at 2, ¶ 9).) According to plaintiff, cell 129 was in a different section of Z Unit from cell 112. Cell 129 was in the "C Section." (ECF No. 1 at 5, ¶ 15.) In April 2013, while at HDSP, plaintiff contracted an H-Pylori bacterial infection. (Id. at 9, ¶ 33.)

////

---

[2] Defendants provided the court with a copy of plaintiff's deposition transcript. (See ECF No. 81 (Defs.' Notice of Lodging Depo. Trscrpt.).)

[3] In their brief and in the DSUF, defendants refer to plaintiff's transfer date as May 27, 2013. In the answer, defendants refer to plaintiff's arrival at HDSP as occurring in the early morning hours of March 23, 2013. (ECF No. 30 at 2, ¶ 7.) However, records provided by the parties indicate that the correct date is the March 27-28, 2013 date cited by plaintiff in his complaint. (See ECF No. 1 at 4, ¶¶ 9-10.) In fact, defendants admit the fact of the March 27 date in their answer. (ECF No. 30 at 2, ¶ 6.) The court assumes defendants' references to the March 23 and May 27 dates were made in error.

Defendant Cox wrote a rules violation report ("RVR") charging plaintiff with damaging his mattress.  (Comp. (ECF No. 1 at 11, ¶ 43); Answ. (ECF No. 30 at 3, ¶ 19).)  Plaintiff was found guilty of the rules violation for having a damaged mattress and a hold was placed on his ability to purchase canteen items.  (Comp. (ECF No. 1 at 13, ¶¶ 53, 54); Answ. (ECF No. 30 at 3, ¶ 21).)

## III. Analysis

### A. Retaliation

Plaintiff alleges three retaliation claims.  First, plaintiff contends the actions of defendants described in his complaint were taken in retaliation for plaintiff's alleged attempt to murder a PBSP officer.  (Plt.'s Depo. at 127:23 - 128:3.)  Second, plaintiff alleges that he told an HDSP counselor about this treatment by defendants.  In retaliation for making that complaint, defendants Cox and Loftin called him names; he was fed minimal amounts of food; Cox, Loftin, and Riley "trashed" plaintiff's cell and destroyed his pain medications whenever he left it; his incoming personal mail was destroyed; and he was falsely charged $13.00 for a book.  (ECF No. 1 at 10-11, 14-15.)  Finally, plaintiff contends that when he attempted to take a 602 form to his RVR hearing in April 2013, defendants Holmes and Loftin took it from him and refused to allow him to attend the hearing, in retaliation for attempting to file a grievance.  (Id. at 12.)

Defendants argue plaintiff cannot succeed on this claim because he fails to establish that he engaged in protected activity.  At most, according to defendants, plaintiff may have alleged a claim of retaliation against defendants Holmes and Loftin for their refusal to allow plaintiff to attend the RVR hearing about the damage to plaintiff's mattress when they saw that plaintiff was carrying a 602 form.

### 1. Legal Standards for First Amendment Retaliation Claim

To prove a claim of First Amendment retaliation, plaintiff must establish each of five elements:  (1) a state actor took some adverse action against him, (2) because of (3) his protected conduct, and such action (4) chilled plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).  Under the first element, plaintiff

need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns."); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendants' challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). The third element includes prisoners' First Amendment right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n. 2 (2001).

### 2. Material Issues of Fact re Retaliation

Plaintiff admitted in his deposition that the primary basis for his retaliation claim is that the officers' conduct was motivated by the allegation that plaintiff had attempted to murder a guard at PBSP. (Plt.'s Depo. at 127-128.) It goes without saying that attempted murder is not a protected activity under the First Amendment. Therefore, plaintiff has no legitimate claim for retaliation on this basis and this court need not examine whether plaintiff has established the other elements for a claim of retaliation

Plaintiff points to two other incidents in which officers' conduct was, arguably, retaliatory. First, plaintiff contends that when he was being taken to the RVR hearing regarding the damage to his mattress, he was holding a 602 form. Plaintiff says he intended to give the form to the hearing officer. When defendants Holmes and Loftin saw the form, they took it from him and retaliated for his attempted to submit a 602 grievance by refusing to allow him to attend

////

the RVR hearing. As a result, he was found guilty and fined. These allegations, if proven, are sufficient to establish a violation of plaintiff's First Amendment right to be free of retaliation.

Here, plaintiff establishes (1) an adverse action in the form of being denied the right to participate in the RVR hearing (2) because of (3) plaintiff's protected conduct of attempting to assert his First Amendment rights by submitting a grievance, and that such action (4) would chill the average inmate's exercise of his First Amendment rights, and (5) the action did not "reasonably advance a legitimate correctional goal." See Rhodes, 408 F.3d at 567–68. Defendants submit no evidence to counter these allegations and make no attempt to argue that there was a legitimate correctional goal in depriving plaintiff of his 602 form and the ability to attend the RVR hearing.

Further, an implication of defendants' argument is that the only conduct protected under the First Amendment is the filing of grievance forms. That argument is not well taken. Plaintiff alleges he was prevented from filing those grievances by the defendants. Further, case law establishes that filing a grievance or lawsuit is not the only activity protected under a First Amendment retaliation claim. See Pearson v. Welborn, 471 F.3d 732, 741 (7th Cir. 2006) (oral complaints about prison conditions are protected activity under the First Amendment).

Plaintiff's final retaliation claim is that after he complained to the HDSP counselor about his treatment, his meal portions were sharply reduced, his mail was tampered with, and his cell was trashed, among other things. However, plaintiff does not connect his complaints to the counselor with the injuries he suffered. Plaintiff fails to show that those actions were taken because he complained to the counselor or for any other reason possibly protected by the First Amendment.

To summarize, defendants are entitled to summary judgment on plaintiff's claim that he was retaliated against for the charge that he attempted to murder a PBSP officer and plaintiff's claim that he was retaliated against for complaining to an HDSP counselor.

Defendants' motion for summary judgment should be denied with respect to plaintiff's contention that defendants Holmes and Loftin refused to allow plaintiff to attend an RVR hearing when they saw that he was attempting to take a 602 form with him.

14

## B. Food Claims

Plaintiff states three distinct complaints about the handling of his food: (a) his food was tainted; (b) he was provided insufficient food; and (c) his food was unsanitary because it ended up on the floor when food trays were thrown into his cell.[4] Defendants concede that plaintiff has adequately alleged claims against defendants Cox and Loftin for tampering with his meals, throwing food trays into his cell, and denying him adequate food. (ECF No. 135-1 at 7.) Defendants argue that plaintiff fails to allege facts supporting claims against defendants Holmes, Foulk, Witcheal, Madrigal, Wung, and Riley. (ECF No. 80-1 at 9; ECF No. 92 at 5.)

### 1. Legal Standards for Denial of Adequate Food

It is well established that "food is one of life's basic necessities." Foster v. Runnels, 554 F.3d 807, 813 (9th Cir. 2009). "The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." Id. at 814 (citing Phelps v. Kapnolas, 308 F.3d 180, 187 (2nd Cir. 2002)). Under the Eighth Amendment, food does not need to be tasty or aesthetically pleasing, but it does need to be adequate to maintain health. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); see also Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002) (food provided must be "nutritionally adequate") (citing Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir. 1980)); Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983) (per curiam) (The Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it."); cf. Hutto v. Finney, 437 U.S. 678, 683, 686-87 (1978) (remarking that conditions of confinement that included a 1000-calorie-per-day diet of "'grue,' a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking the mixture in a pan,". . . "might be tolerable for a few days and intolerably cruel for weeks or months").

---

[4] Part of plaintiff's contention is that throwing food trays amounted to an assault when the food and tray hit him. However, the court previously found the assault contention does not state a cognizable § 1983 claim and plaintiff failed to demonstrate he had met the requirements of the Government Claims Act to allege a state law claim. Accordingly, that contention was dismissed from this action. (See ECF No. 14 at 3-4.)

To establish an Eighth Amendment claim for the deprivation of food, a plaintiff must allege facts showing that objectively he suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Further, a showing of mental or emotional injury alone is not actionable under § 1983. A plaintiff bringing a suit under § 1983 must show he has suffered physical injury, in addition to mental and emotional harms. 42 U.S.C. § 1997e(e); see also Perkins v. Kansas Dept. of Corr., 165 F.3d 803, 807 (10th Cir. 1999).

### 2. Disputed Facts re Denial of Proper Food

#### a. Tainted Food

Plaintiff alleges that starting around April 16, 2013, he discovered various foreign objects, including leaves, trash, and rocks in his food. Plaintiff specifically states in his complaint that defendants Cox and Loftin were aware of the tainted food and would joke about it. (ECF No. 1 at 7.) He also states that defendant Riley was present during the food tampering and that he told Riley about it. (Id.) Plaintiff does not allege specific facts showing that any of the other defendants participated in placing foreign objects in his food or were aware of it. Plaintiff states that at an April 4, 2013 meeting, he orally informed defendant Foulk about actions by Riley, Cox, and Loftin regarding his food. However, that notification could not have included plaintiff's tainted food because he alleges that it was not until later that foreign objects began appearing in his food.

Plaintiff states that as the result of either his tainted food or his unsanitary living conditions, he contracted an H-Pylori bacterial infection. (ECF No. 89 at 11.)

#### b. Insufficient Food

Plaintiff states that defendants Cox and Loftin refused to give him lunch, and refused to allow others to give him lunch, for thirteen days. (ECF No. 89 at 16.) Plaintiff states that after he talked with the counselor on April 28 or 29, 2013, his food portions were dramatically reduced. He states he was being served "a teaspoon amount of each food portion." (Id. at 7-8.) Plaintiff further states that he received inadequate meals for three weeks. (Id. at 8.) However, besides the

////

16

specific allegations about Cox and Loftin, plaintiff fails to identify which defendants were involved in these "dramatically decreased" portions.

### c. Unsanitary Food

Plaintiff contends food trays were thrown or dropped into his cell from March 28 to about April 16, 2013. He states that Cox and Loftin were the "main ones" throwing his food trays into his cell. (Plt.'s Depo. at 42, 90.) Plaintiff states that defendant Riley was present when Cox and Loftin threw food into his cell and that he complained to Riley about it. (ECF No. 1 at 7.) He also states that Holmes "sometimes" threw his food tray. (Plt.'s Depo. at 42.)

Plaintiff disputes defendants' contention that he has not specifically alleged actions by defendants Witcheal, Wung, Madrigal, and Foulk. Plaintiff states that Witcheal, Wung, and Madrigal "participated in" throwing food to plaintiff. (ECF No. 89 at 9; Plt.'s Decl. (ECF No. 142-1 at 8); Plt.'s Stmt. of Disputed Facts (ECF No. 142-2 at 2-3).) When asked at his deposition if these three defendants had thrown food at him, plaintiff answered "Yes." (Plt.'s Depo. at 91, 98.)

Plaintiff further states that he orally told defendant Foulk about this treatment at the April 4, 2013 ICC meeting and Foulk failed to take action to stop it. (Plt.'s Depo. at 74-75; Compl. (ECF No. 1 at 8); Plt.'s Decl. (ECF No. 142-1 at 9).) Defendants argue that plaintiff's allegation regarding Foulk is insufficient because plaintiff has not articulated just what he told Foulk. However, defendants do not dispute plaintiff's contentions that plaintiff told Foulk he was receiving tainted and inadequate food or that Foulk did nothing as a result. Plaintiff's allegations, if proven, could demonstrate Foulk had responsibility for denying plaintiff appropriate food.

### 3. Material Issues of Fact re Food Claims

Plaintiff has stated, and defendants have provided no evidence to dispute, that defendants Cox, Loftin, Holmes, Witcheal, Wung, and Madrigal took actions that caused plaintiff's food to be unsanitary. However, while plaintiff states that Cox and Loftin regularly were involved in providing him unsanitary and tainted food, the only allegation against Holmes, Witcheal, Wung, and Madrigal is that they had thrown food at plaintiff. Plaintiff has not alleged that they did so more than once. Plaintiff's allegations against those three defendants are insufficient to show that

17

they caused plaintiff to suffer a sufficiently serious deprivation due to the quality or quantity of his food.

Plaintiff's food-related claims against Holmes, Witcheal, Wung, and Madrigal should be dismissed.

Plaintiff has, however, shown that defendants Riley and Foulk were aware that plaintiff's food was unsanitary, had the authority to address the problem, and took no action to do so. Plaintiff has further shown defendants Cox and Loftin were responsible for plaintiff receiving inadequate food when he was denied lunches for a period of time. This court finds plaintiff's showing sufficient to support a claim that these defendants denied plaintiff food that was not adequate to maintain his health in violation of the Eighth Amendment.

Summary judgment for defendants Cox, Loftin, Riley, and Foulk is not appropriate on plaintiff's claims regarding the provision of unsanitary and inadequate food.

**C. Conditions of Confinement Claim**

Plaintiff alleges the conditions of his cell and his confinement at HDSP were inhumane for three reasons: (1) his mattress was thin and dirty; (2) his cell was dirty, and he was not provided cleaning supplies; and (3) he was not allowed to shower for a month and was not provided hygiene supplies. Plaintiff states that as a result of the inadequate mattress, he experienced back pain. (ECF No. 89 at 11.) He alleges that as a result of either his unsanitary food, or the conditions of his cell and person, or both, he contracted a bacterial infection.

Defendants note that plaintiff has specifically identified defendants Cox, Loftin, and Riley as being responsible for these conditions. (ECF No. 135-1 at 9.) They point out that plaintiff has made, at most, only general allegations against defendants Foulk, Wung, Madrigal, and Witcheal. In addition, defendants argue that plaintiff's allegations of an unclean toilet do not rise to the level of an Eighth Amendment violation.

Defendants do, however, appear to concede that plaintiff's claims that he was denied hygienic and cleaning supplies is sufficient to support an Eighth Amendment claim against Cox, Loftin, and Riley. (Id.)

////

**1. Legal Standards Claim re Conditions of Confinement**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Id. at 834; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

**2. Material Issues of Fact re the Conditions of Confinement**

This court finds two distinct aspects to plaintiff's claim regarding the conditions of his confinement. First, he complains the too-thin mattress caused him back pain. Second, he

////

complains of the unsanitary conditions of his cell and lack of hygiene supplies, which plaintiff alleges resulted in contracting a bacterial infection.

### a. Too-thin Mattress

With respect to plaintiff's claim that his mattress was too thin, courts have held that similar sleeping conditions do not amount to an Eighth Amendment violation. See Valdez v. Beard, No., 2018 WL 1036404, at *5 (E.D. Cal. Feb. 23, 2018) ("[A] comfortable mattress and the presence of a pillow are simply not part of the 'minimal civilized measure of life's necessities.'" (citing Faunce v. Gomez, 163 F.3d 605, at *1 (9th Cir. 1998) (unpublished disposition).), rep. and reco. adopted, 2018 WL 3129939 (E.D. Cal. June 25, 2018); Muniz v. Hill, No. CV-06-120-ST, 2008 WL 1995457, at *4-6 (D. Or. May 6, 2008) (replacing prisoner's foam-filled mattress with a thinner, sponge-filled security mat for thirty days did not violate the Eighth Amendment); Brown v. Hamblin, No. 03-C-139-C, 2003 WL 23274543, at *2 (W.D. Wis. Apr. 16, 2003) (Allegation that prisoner had to sleep on a mattress on the floor for 28 days in a two-month period and 8 days in another month did not amount to cruel and unusual punishment.). In addition, the Ninth Circuit has held that "there is no clear legal guidance 'on whether mattress deprivation [requiring sleeping on a concrete floor] was an Eighth Amendment violation.'" Jones v. Neven, 678 F. App'x 490, 493 (9th Cir. 2017) (quoting Chappell v. Mandeville, 706 F.3d 1052, 1060 (9th Cir. 2013)); see also Finley v. Neven, 388 F. App'x 694 (9th Cir. 2010) (prisoners do not have a clearly established right to sleep on a comfortable mattress). Therefore, the Ninth Circuit held, defendants were entitled to qualified immunity on a conditions of confinement claim based on sleeping arrangements. Id. The same should be true here, particularly where plaintiff did have a mattress, just not one he felt was thick enough.

Plaintiff does not contend defendants were aware that he had a medical condition requiring a better mattress or that he had any sort of medical chrono requiring one. On the facts presented by plaintiff, he fails to establish each element of a claim that the too-thin mattress violated his Eighth Amendment rights. Accordingly, that claim should be dismissed.

////

////

### b.  Unsanitary Conditions

With respect to plaintiff's claim of unsanitary conditions, defendants point to cases in which the Ninth Circuit and district courts in this circuit have held that extremely unsanitary conditions for a prolonged period of time rise to the level of an Eighth Amendment violation.  See Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), amended on other grounds, 75 F.3d 448 (9th Cir. 1995); see also Hearns v. Terhune, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (unconstitutional prison conditions claim where the inmate alleged serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, stagnant pools of water infested with insects, and a lack of cold water when the prison yard exceeded 100 degrees).

These cases do not, however, establish that plaintiff's claim of a month-long period of unsanitary conditions and a lack of hygiene supplies and showers was not sufficiently long and severe to constitute a serious deprivation.  In fact, exposure to severely unsanitary conditions for as few as three days has been held to be a potential Eighth Amendment violation.  See McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir.2001) (vacating Rule 12(b)(6) dismissal where plaintiff alleged he was forced to live in "feces-covered cell" for three days); Young v. Quinlan, 960 F.2d 351, 355–56, 363–65, (3d Cir.1992) (reversing summary judgment for defendants where inmate was moved to "dry cell" without working toilet for 96 hours and forced to urinate and defecate in his cell), superseded by statute on other grounds as stated in Nyhuis v. Reno, 204 F.3d 65, 71 n. 7 (3rd Cir. 2000).  Even denial of only regular showers and regular laundry service have been held to violate the Eighth Amendment.  Toussaint v. McCarthy, 597 F. Supp. 1388, 1411 (N.D. Cal. 1984), overruled on other grounds, 801 F.2d 1080 (9th Cir. 1986).  A prisoner has a right to the hygiene items which reflect "the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Further, plaintiff's claim regarding his living conditions is related to his claim of unsanitary food.  Food thrown onto the floor of plaintiff's dirty cell certainly resulted in the obvious possibility that the food may become tainted.  And, plaintiff suffered a bacterial infection

likely caused by the unsanitary conditions of his cell and/or his food. Courts have held that even temporary unsanitary conditions may result in an Eighth Amendment violation where the prisoner suffers injury. See Sherman v. Gonzalez, No. 1:09-cv-0420-LJO-SKO, 2010 WL 2791565, at **4-6 (E.D. Cal. July 14, 2010) (plaintiff states a sufficiently serious deprivation from five-hour exposure to sewage where it seriously exacerbated plaintiff's asthma), rep. and reco. adopted, 2010 WL 3432240 (E.D. Cal. Aug. 31, 2010).

Plaintiff alleges a combination of unsanitary conditions that may, if proven, meet Eighth Amendment standards. As stated above, defendants concede that plaintiff has alleged that claim against defendants Cox, Loftin, and Riley. The question here is whether plaintiff has adequately made out a claim against Madrigal, Witcheal, Wung, and Foulk.

In his deposition, plaintiff was asked about his complaints about defendant Madrigal. Plaintiff testified that he "yelled" up to defendant Madrigal, who was in the tower about six cells from plaintiff's cell. (Plt.'s Dep. at 91.) However, plaintiff does not explain what he told or asked Madrigal. He states only that Madrigal told him to "shut up." Plaintiff does state that Madrigal would occasionally come by plaintiff's cell and that he told plaintiff why officers were treating him badly. (Id. at 94-95.) Plaintiff says Madrigal told him it was "[b]ecause [of] what I did in Pelican Bay." (Id. at 94.)

With respect to defendant Witcheal, plaintiff testified that more than once he asked Witcheal for soap, a toothbrush, tooth powder, toilet paper, and supplies to clean his cell. (Id. at 95, 96.) Plaintiff testified that he is "positive" Witcheal is one of the officers who refused to help him. (Id. at 98.)

With respect to defendant Wung, plaintiff states only that he was "hesitant" to give him things, but "he was one of the first ones to give me stuff." (Id.)

Defendants argue that plaintiff's allegations against Wung, Witcheal, and Madrigal are insufficient to state a claim. This court agrees. Plaintiff makes no specific allegations that any of these three defendants were aware of the conditions of plaintiff's cell, had the authority to change it, and failed to do so. The fact that defendant Witcheal may have refused to provide plaintiff with supplies more than once is insufficient to state a claim that Witcheal was deliberately

indifferent to a substantial risk of serious harm to plaintiff over the month-long period plaintiff alleges he was subjected to unsanitary conditions.

With respect to defendant Foulk, plaintiff states that he told Foulk at the April 4, 2013 ICC meeting about the conditions of his cell. This is sufficient to show Foulk was aware of the conditions of plaintiff's cell and that he failed to take corrective measures.

The court finds plaintiff has adequately alleged claims, which defendants do not contest, that defendants Cox, Loftin, and Riley acted in conscious disregard of plaintiff's needs. In addition, plaintiff has sufficiently alleged defendant Foulk had responsibility for the conditions. At this juncture, summary judgment for these defendants on plaintiff's conditions of confinement claims is inappropriate. This court does find, however, that plaintiff has not stated conditions of confinement claims against Wung, Witcheal, and Madrigal.

### D. Medical Claim

Plaintiff contends that defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Riley prevented plaintiff from getting medical attention for a week by disposing of his sick call slips and ignoring his pleas for help. During that week, plaintiff suffered pain and frequent bouts of vomiting. Defendants contends plaintiff's "day-long stomach pain" does not amount to a serious medical need. However, in his complaint, plaintiff is clear that he started having sharp stomach pains and vomiting on April 7 and did not go "man down" and manage to be seen until April 14, a week later. (ECF No. 1 at 9.) Defendants present no evidence to contradict plaintiff's contention that he suffered the stomach problems, and sought help for those problems, for a week before being permitted to see a doctor.

### 1. Legal Standards for Eighth Amendment Medical Claim

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 2. Are there Material Issues of Fact re Deliberate Indifference to Plaintiff's Serious Medical Needs?

Considering the facts in the light most favorable to plaintiff, plaintiff suffered vomiting and stomach pain for a week.  During that week, he asked defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Riley to allow him to see a doctor, and they refused.  Certainly, the denial of medical care while plaintiff was actively ill may be an Eighth Amendment violation. Defendants' argument that plaintiff was treated for his bacterial infection ignores the fact that he suffered without treatment for a week.  Defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Riley should be denied summary judgment on plaintiff's medical claim.

### E. Qualified Immunity

Defendants argue they are entitled to qualified immunity regarding plaintiff's claim that the unsanitary conditions of his confinement violated the Eighth Amendment.

### 1. Legal Standards

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

   "For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos, 661 F.3d at 442 (quoting Ashcroft v. al—Kidd, 563 U.S. 731 (2011) (some internal marks omitted)). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition" Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

## 2. Are Defendants Entitled to Qualified Immunity?

   Defendants make a brief argument that they are entitled to qualified immunity. They state only that plaintiff has failed to bear his burden of proving that the right to a clean cell was clearly

established in 2013. According to defendants, "it is unclear if a mere 'grimy toilet' constitutes an Eighth Amendment violation. (ECF No. 135-1 at 12.) They add, without citation to any evidence, that the defendants "acted reasonably according to protocol with respect to housing [plaintiff] in the cell at the time." (Id.) In making these arguments, defendants fail to address the fact that plaintiff does not complain solely about the condition of his cell. Plaintiff also alleges he was denied hygiene items and showers. It is clearly established that the Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials provide prisoners with basic necessities such as food, clothing, shelter, sanitation, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). "Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson, 45 F.3d at 1314. The totality of plaintiff's claims of unsanitary conditions of his cell, his self, and his food for a month should defeat defendants' assertion of qualified immunity.

Defendants cite no case law to the contrary. And, the cases in which courts have found qualified immunity appropriate based on a prisoner's living conditions did not involve the totality of circumstances plaintiff contends he faced in this case. See, e.g., Jones v. Neven, 678 F. App'x 490, 493 (9th Cir. 2017) (defendants entitled to qualified immunity on plaintiff's claim that he was forced to sleep on the floor for four days). Further, in those cases, the prisoner did not end up with an injury allegedly caused by the unsanitary living conditions.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 135) be granted in part and denied in part as follows:

1. Defendants' motion be GRANTED on the following claims:

    a. Plaintiff's claims for retaliation based on his alleged attempted murder of a PBSP prison guard;

    b. Plaintiff's claims for retaliation based on his complaint to an HDSP counselor;

    c. Plaintiff's claims regarding unsanitary and inadequate food against defendants Holmes, Witcheal, Madrigal, and Wung;

d. Plaintiff's claim that his mattress was too thin;

e. Plaintiff's claims regarding the unsanitary conditions of his confinement against Witcheal, Madrigal, and Wung;

2. Defendants' motion be DENIED on the issue of qualified immunity; and

3. Defendants' motion be DENIED on the following claims:

a. Plaintiff's retaliation claim against defendants Holmes and Loftin for tearing up plaintiff's 602 grievance form and refusing to allow plaintiff to attend his RVR hearing;

b. Plaintiff's claims against defendants Cox, Loftin, Riley, and Foulk for unsanitary and inadequate food;

c. Plaintiff's claims against defendants Cox, Loftin, Riley, and Foulk regarding the unsanitary conditions of his confinement;

d. Plaintiff's medical claim against defendants Cox, Loftin, Witcheal, Wung, Madrigal, and Riley.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 5, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/garc2378.msj